**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

Civil Action No. 6:16-CV-2189-ORL-22KRS

UNITED STATES ex rel.                                    :

**UNDER SEAL,**                                          :

                                                        :

BRINGING THIS ACTION ON BEHALF  :
OF THE UNITED STATES
OF AMERICA                                              :

A. Lee Bentley                                          :
U.S. Attorney                                           :     Complaint **Filed IN CAMERA SEALED**
Middle District of Florida                              :     Pursuant to 31 U.S.C. § 3730(b)
400 W. Washington Street                                :
Suite 3100                                              :
Orlando, Florida 32801                                  :

and                                                     :
                                                        :
                                                        :     _____
Loretta Lynch                                           :     United States District Court
Attorney General of the United States  :     Judge
Department of Justice                                   :
10th & Constitution Aves. N.E.                          :
Washington, D.C. 20530                                  :
                                                        :
          Plaintiff and Relator,                        :
                                                        :
vs.                                                     :
                                                        :
**UNDER SEAL**                                          :     **DO NOT PLACE IN PRESS BOX**
                                                        :     **DO NOT ENTER ON PACER**
          Defendants.                                   :

**FALSE CLAIMS ACT COMPLAINT**

CLERK U.S. DISTRICT
MIDDLE DISTRICT
ORLANDO, FL

2016 DEC 22   AM 9: 3

FILED

S-1 JC

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

Civil Action No. _____

UNITED STATES ex rel.
SCOTT THOMPSON,

        Plaintiff/Relator,

v.

Surgical Care Affiliates; Orlando Center for    **Complaint Filed IN CAMERA SEALED,**
Outpatient Surgery, LP; and Dr. Patrick Hunter    **Pursuant to 31 U.S.C. § 3730(b)**
_____ /

## COMPLAINT

COMES NOW Relator, Scott Thompson, on behalf of himself and the United States of America and alleges as follows:

### INTRODUCTION

1.      Relator brings this action on behalf of himself and the United States of America to recover statutory damages and civil penalties under the False Claims Act, 31 U.S.C. §§ 3729-33. He also brings a whistleblower retaliation claim under 31 U.S.C. § 3730(h) for Defendant Surgical Care Affiliates wrongful termination of Relator for his attempts to stop one or more false claims from being submitted to the United States.

2.      The False Claims Act allegations are based upon Defendants' submission of false and fraudulent healthcare claims for payment to the United States, and its fiscal intermediaries, in order to obtain millions of dollars in payments from 2010 to the present. Defendants' false and fraudulent claims to the United States included performing medically unnecessary lithotripsy and ultrasound procedures and the Surgical Care entity Defendants providing prohibited kickbacks to Dr. Hunter related to the lithotripsy procedures.

3.     Relator has complied with the requirement of the False Claims Act to provide all of his material evidence to the United States prior to filing suit.

4.     Relator is serving the U.S. Attorney for the Middle District of Florida and the United States Attorney General with a copy of this Complaint filed under seal.

## JURISDICTION AND VENUE

5.     This action arises under the False Claims Act, as amended, 31 U.S.C. §§3729-33. This Court has jurisdiction over this action under 31 U.S.C. §3730 and 28 U.S.C. §§ 1345 and 1367 (a).

6.     The Court has jurisdiction over the Defendants, because this civil action arises under the laws of the United States and at least one of the Defendants can be found in, is authorized to transact business in, and is transacting business in the Middle District of Florida, and because the Defendants committed acts within this district and division that violated 31 U.S.C. §3729 et seq.

## PARTIES

7.     Relator, Scott Thompson ("Relator Thompson"), is a citizen of Birmingham, Alabama and the United States of America. Relator Thompson is a former employee of Defendant Surgical Care Affiliates where he worked as the Director of Compliance. He worked at Surgical Care Affiliates in Compliance beginning in 2007. Relator Thompson was terminated on December 2, 2016 after multiple attempts to stop one or more false claims to the United States, after he provided material evidence of False Claims to the Government and during the time he was working with counsel on the filing of this False Claims Act Complaint against Defendant.  Relator Thompson worked in an administrative office of Surgical Care Affiliates located at 569 Brookwood Village #901, Birmingham, AL 35209. In his role as Director, Relator

Thompson received phone calls and questions and worked with facilities on compliance issues regularly. Relator Thompson worked to maintain the regulatory compliance among over 6,000 employees and serves as a resource for Medicare and Medicaid coding and billing guidance and compliance.

8.     Relator became aware of issues regarding Dr. Hunter's lithotripsy procedures in May 2012 when Shasta Blankenship, the Director of Financial Operations, sent an email to Relator Thompson pointing out the volume of lithotripsy that Dr. Hunter was performing. Based on his review of the lithotripsy lease agreement, Relator Thompson became aware that Dr. Hunter was being paid by SCA on a per-click basis for each lithotripsy procedure. When Relator Thompson saw that Dr. Hunter was being paid per-click, it caused him to look into the Dr. Hunter's volume and Relator realized that the number of procedures being performed by Dr. Hunter was very high, which meant that potentially medically unnecessary procedures were being performed.

9.     Defendant Surgical Care Affiliates ("SCA") manages and/or owns a portion of different surgery centers and surgical hospitals nationwide. The majority of SCA's business involves joint ventures between physician owners of facilities and SCA. SCA typically maintains a close relationship with the facility, providing management services such as, but not limited to, compliance, legal, payroll, and accounting.  The Headquarters for Surgical Care Affiliates is at 510 Lake Cook Road, Suite 400, Deerfield, Illinois 60015.

10.     Defendant Orlando Center for Outpatient Surgery, L.P. ("The Center") is an affiliate of SCA. The Center is located at 1405 S. Orange Avenue, Suite 400, Orlando, Florida, 32806. The Center's NPI # is 1861463259. The Orlando Center for Outpatient Surgery is one of SCA's facilities located in Orlando, Florida. Employees of The Center are SCA employees that

are leased by The Center. SCA has a management services agreement whereby it leases employees to the Orlando Center for Outpatient Surgery. SCA is intimately involved in the submission of false claims to the Federal Government from the Orlando Center, because SCA employees are billing the services and because of SCA's ownership in the facility.

11.     Defendant Dr. Patrick T. Hunter ("Dr. Hunter") is a urologist that performed urologic procedures at The Center. Dr. Hunter earned his Medical Degree from the University of Vanderbilt. He served as the Chief Resident of Urology at the University Of Florida College Of Medicine in Gainesville, Florida. Until May 2016, he was practicing with Florida Urology Group in Orlando, Florida. It appears, and Relator believes, Dr. Hunter is and was the only physician practicing at Florida Urology Group during the time period of the false claims submissions. The Urology Group lists that Dr. Hunter is on a medical leave of absence and has been since May 2016. Dr. Hunter is a citizen of the United States and believed to be a resident of Florida, possibly temporarily residing in Montana.

12.     Dr. Hunter's NPI number is 1558417808. Florida Urology Group's NPI number is 1699193443 (Last updated 3/18/2014). The Florida Urology Group is located at 226 W. Michigan Street, Orlando, FL 32806.

## THE LAW

13.     Except as specifically noted in the Complaint, the allegations herein apply to the time period of 2010 through the present.

### The False Claims Act

14.     The False Claims Act provides in pertinent part that:

(a) any person who - - (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent

claim; (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,

* * * *

is liable to the United States Government for a civil penalty of not less than $5,500.00 and not more than $11,000.00, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 Note; Public Law 104-410), plus three times the amount of damages which the Government sustains because of the act of that person. (b) For purposes of this section(1) the terms "knowing" and "knowingly" (A) means that a person, with respect to information (i) has actual knowledge of the information; (ii) acts and deliberate ignorance of the truth or falsity of the information, or (iii) acts in reckless disregard of the truth or falsity of the information; and, (B) require no proof of specific intent to defraud; (2) the term "claim" (A) means any request or demand, whether under contract or otherwise, for money or property and whether or not the United States has title to the money or property that (i) is presented to an officer, employee or agent of the United States, or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government (I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested and demanded and (3) the term "obligation" means an established duty, whether or not fixed, arising from an expressed or implied contractual, grantee-grantor, or license-licensee relationship, from a fee-based or similar relationship, from a statute or regulation, or from the retention of any over-payment; and (4) the term "material" means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property. 31 U.S.C. §3729

## The Anti-Kickback Statute

15. The Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), arose out of Congressional concern that payoffs to those who can influence healthcare decisions would result in goods and services being provided that are medically unnecessary, of poor quality, or even harmful to a vulnerable patient population. To protect the integrity of the program from these difficult-to-detect harms, Congress enacted a per se prohibition against the payment of kickbacks in any

form, regardless of whether the particular kickback gave rise to overutilization or poor quality of care. First enacted in 1972, Congress strengthened the statute in 1977 and 1987 to ensure that kickbacks masquerading as legitimate transactions did not evade its reach. See Social Security Amendments of 1972, Pub. L. No. 92-603, §§ 242(b), (c); 42 U.S.C. § 1320a-7b, Medicare-Medicaid Antifraud and Abuse Amendments, Pub. L. No. 95-142; Medicare and Medicaid Patient and Program Protection Act of 1987, Pub. L. No. 100-93.

16.     The Anti-Kickback Statute prohibits any person or entity from making or accepting payment or anything of value to induce or reward any person for referring, recommending or arranging for federally-funded medical services. Violation of the statute can also subject the perpetrator to exclusion from participation in federal health care programs and civil monetary penalties of $50,000 per violation and three times the amount of remuneration paid. 42 U.S.C. § 1320a-7(b)(7); 42 U.S.C. § 1320a-7a(a)(7).

17.     Defendants are required to certify compliance with the Anti-Kickback Statute as condition of payment when they submit their claims for payment to the aforementioned Federal payors on form CMS 1500 and OB-04 and actual compliance is a condition of payment.

**Federal Healthcare Programs**

18.     The federal programs financially harmed by Defendants' wrongful conduct are Medicare, Tricare, and Railroad Medicare. Defendants submitted claims to and received money from these federal programs.

### A. The Medicare Program

19.     Title XVIII of the Social Security Act, 42 U.S.C. § 1395, et seq., establishes the Health Insurance for the Aged and Disabled Program, popularly known as the Medicare

program. The Secretary of HHS administers the Medicare Program through CMS, a component of HHS.

20.     The Medicare program consists of multiple parts. Medicare Part A provides basic insurance for the costs of hospitalization and post hospitalization care. 42 U.S.C. §1395c 1395i 2 (1992).

21.     Medicare Part B is a federally subsidized, voluntary insurance program that covers a percentage (typically eighty percent) of the fee schedule amount for, but not limited to, physician, laboratory and diagnostic services. 42 U. S.C. §§ 1395k, 13951, 1395x(s). Reimbursement for Medicare claims is made by the United States through CMS. CMS, in turn, contracts with private insurance carriers, known as fiscal intermediaries, to administer and pay Medicare Part B claims from the Medicare Trust Fund. 42 U.S.C. § 1395u.

22.     As a condition of payment, the Defendants were required to expressly or impliedly certify compliance with the Medicare laws and regulations including the Anti-Kickback law.

23.     At all times relevant to the Complaint, Defendants were Participating Medicare Part B providers. The Defendants submitted claims to Medicare for services that were tainted and false by the nature of the prohibited financial relationship between the Defendants as described below.

24.     At all times relevant to the complaint, the Medicare program constituted a substantial source of revenue for Defendants.

### B. Tricare/CHAMPUS

25.     Tricare, formerly known as the Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS"), is a health care program of the United States Department of

Defense Military Health System. Tricare provides civilian health benefits for military personnel, military retirees, and their dependents, including some members of the Reserve Component. The Tricare program is managed by the Defense Health Agency (formerly Tricare Management Activity) under the authority of the Assistant Secretary of Defense (Health Affairs).

### C. Federal Railroad Insurance

26.     Palmetto GBA processes Medicare Part B claims for Railroad Retirement beneficiaries as the Railroad Specialty Medicare Administrative Contractor. The Railroad Retirement Board is an independent federal agency that has contracted with Palmetto GBA to administer benefit programs for railroad workers and their families under the Railroad Retirement and Railroad Unemployment Insurance Acts.

## THE FRAUDULENT SCHEMES AND FALSE CLAIMS FOR PAYMENT

**Medically Unnecessary Procedures and Overutilization of the Lithotripsy Performed by Dr. Patrick Hunter**

27.     Extracorporeal shock wave lithotripsy ("ESWL") is a procedure that breaks up, among other things, kidney stones by using shock waves generated by a lithotripter machine. According to the U.S. National Library of Medicine, ESWL is the most common form of lithotripsy. ESWL is billed under CPT Code 50590, the code for "shock wave crushing of kidney stones."

28.     The lithotripsy procedure should take anywhere from 45 minutes to an hour. Over the period January 1, 2009 through March 3, 2014, Dr. Hunter's average procedure time across 2,452 patients for CPT code 50590 was 28 minutes. Some patients had more than one procedure performed during the same operative session and time for those additional procedures would be included in the 28 minute average.

29.     There are several serious risks both intra- and post-operatively and long term involved with the lithotripsy procedure. Those risks include, bleeding around the kidney which may require a transfusion, kidney infection, problems with kidney function after the procedure and ulcers in the stomach or small intestine. Performing the procedure when medically unnecessary exposes patients to these risks.

30.     2012 Medicare data shows that Dr. Hunter was the top ordering physician for CPT Code 50590 out of 1449 urologists that submitted at least 10 Medicare claims for this CPT Code. The data also shows that Dr. Hunter performed the lithotripsy procedure almost twice as much as the next highest ordering physician.

31.     The 2012 data also ranked The Center third nationally and first in Florida out of all Ambulatory Surgical Centers submitting at least 10 Medicare claims for CPT Code 50590. The Center's rank was that high with only one physician, Dr. Hunter, performing procedure 50590 on site. Both the individual physician and the facility are ranked separately because there are two charges for each ESWL procedure being performed by Dr. Hunter—both a facility services charge and a professional services charge.

32.     As set forth further in the Kickback section below, SCA paid Dr. Hunter almost $3 million in as little as three (3) years through a lease agreement for his lithotripsy machine. Because the lease payments were being made on a "per click" basis, the large dollar amount of payments made by SCA to Dr. Hunter confirms that he is performing a very large number of lithotripsy cases. The actual value of the leased lithotripsy machine, however, was less than $40,000.

33.     Based on reimbursement information from The Center, it is clear that the number of Lithotripsy procedures being performed for Medicare patients were significantly higher than

other physicians. Lithotripsy procedures performed by Dr. Hunter on Medicare patients from 01/01/2009 through 03/03/2014 totaled 593 procedures. Tricare South Region patients had 153 lithotripsy procedures performed by Dr. Hunter during the same time period. In one year, Dr. Hunter performed a total of 695 lithotripsy procedures all the while continuing to perform other procedures for his patients, as needed.

34.     Relator Thompson researched and made specific suggestions for a firm to perform a peer review of Dr. Hunter's lithotripsy procedures. However, SCA did not follow through with this recommendation and instead had one of their own affiliated urologists, Dr. Saltzstein, review a total of only eleven of Dr. Hunter's cases using The Center's charts. The review did not include Dr. Hunter's office records or notes.

35.     The Facility Administrator at The Center, Kathy Myers, worked with the Medical Executive Committee to set up a second peer review of Dr. Hunter. This second review was also performed by an SCA affiliated urologist, Dr. D'Angelo. Dr. D'Angelo's peer review only included a review of The Center's charts and did not include the doctor's office records or notes.

36.     SCA received results from Dr. D'Angelo's review of Dr. Hunter's procedures. His results indicated that Dr. Hunter was overutilizing the lithotripsy procedure and performing medically unnecessary lithotripsy procedures.

37.     In addition to performing an abnormally large number and medically unnecessary lithotripsy procedures, Dr. Hunter performs a large volume of ultrasounds in his own medical office, versus referring patients to an independent diagnostic testing facility or hospital outpatient department. Dr. Hunter ranked 6th out 1237 urologists, for the calendar year 2012, that ordered and performed ultrasounds (CPT Code 76770) in their own office, according to Medicare data.

38.     The standard of care for detection of kidney stones is not ultrasound in most cases, yet Dr. Hunter is highly ranked for both ultrasounds and for the treatment of kidney stones with the lithotripsy procedure.

39.     Dr. Hunter also performs x-rays in his office and was ranked number 1 out of 1189 urologists that ordered and performed x-rays in their office, according to 2012 Medicare data for CPT Code 74000 (X-ray of abdomen, single view).

40.     Dr. Hunter's operative reports provided minimal detail, while operative reports from other urologists provided the size and exact location of the kidney stones in their patients, some even containing information on the radiographic workup (e.g., CT scan or KUB x-ray) performed to diagnose and/or confirm the stones.  Dr. Hunter does not provide the size or location of the stone at issue and most often does not provide the radiographic work up he used for diagnosis.

41.     Given that Dr. Hunter was so highly ranked (by volume) and was performing many of these procedures in one day, SCA had knowledge of the fact that there was a very high volume of lithotripsy procedures coming from one single physician. Dr. Hunter was also performing multiple lithotripsy procedures on the same patients in a short period of time.

42.     SCA conducted an internal investigation regarding Dr. Hunter, but there were no real action taken because SCA and The Center were all aware of his impending "retirement."

**Kickbacks Paid to Defendant Dr. Hunter**

43.     Dr. Hunter began performing lithotripsy procedures at The Center in June 2010. The financial relationship began through a contractual agreement whereby The Center leased a lithotripsy machine owned by Urology Treatment Center ("UTC").

44.     Dr. Hunter was an owner of UTC and was on the medical staff at The Center. Dr. Hunter signed the lease agreement as the President of UTC. Under the lease agreement, Defendant The Center paid Urology Treatment Centers on a "per procedure" (a/k/a "per click") basis. The lease agreement between UTC and The Center required that payments were made to UTC by The Center on a per -procedure basis at $2,200 for commercially insured patients and $1,300 for Medicare beneficiaries.

45.     Dr. Hunter submitted claims to Medicare and other payors for his professional services each time that he performed a lithotripsy procedure, CPT Code 50590. Dr. Hunter's average charge submitted to Medicare for CPT Code 50590 for year 2012 was $2306.

46.     The Center billed Medicare and other federal payors for the related facility charges for each lithotripsy procedure under CPT Code 50590. That submitted facility charge for CPT code 50590 was $6593 when Dr. Hunter first began performing this procedure at The Center. Then, The Center raised the charge for CPT code 50590 in subsequent time periods by 7% each time—from $6593, to $7550, and then, to $8079. The difference between The Center's submitted facility charge and the kickback of $1300 per procedure for federal payor patients and $2200 for commercially insured patients paid to Dr. Hunter yield a significant profit and incentive to The Center.

47.     SCA employees submitted billing to federal and commercial payers for The Center's facility charges on site at The Center in Orlando, Florida. On February 1, 2011, SCA created a separate business unit that took over billing for The Center. The new unit was made up of SCA employees that submitted billing for The Center and other entities. When this move took place, claims began being filed from the SCA regional billing office location, but the facility

staff at The Center still had a part in the overall billing cycle (e.g., patient registration, up front collections, etc.).

48.     Because Dr. Hunter separately submitted billing for his professional services that were provided at The Center, both The Center's and Dr. Hunter's claims are false claims for payment as they are tainted by the illegal kickback that incentivized overutilization of lithotripsy procedures under CPT Code 50590.

49.     As an indicia of reliability regarding the medically unnecessary lithotripsy claims submitted in violation of the Anti-Kickback statute, Relator provides the following examples of actual false claims:

**Medicare**

Visit ID: 55158-1. Date of Service: 10/04/2012.

Procedure: CPT Code 50590. Amount submitted by The Center for the facility charge to Medicare for payment for the procedure: $7,550

Visit ID: 41286-2. Date of Service: 2/27/14.

Procedure: CPT 50590. Amount submitted by The Center for the facility charge to Medicare for payment for the procedure: $7,550

Visit ID: 54604-2. Date of Service: 07/16/2012.

Procedure: CPT Code 50590. Amount submitted by The Center for the facility charge to Medicare for payment for the procedure: $7,550

Visit ID: 57597-1. Date of Service: 01/02/2014.

Procedure: CPT Code 50590. Amount submitted by The Center for the facility charge to Medicare for payment for the procedure: $8,079

Visit ID: 51953-3. Date of Service: 05/23/2013.

Procedure: CPT Code 50590. Amount submitted by The Center for the facility charge to Medicare for payment for the procedure: $7,550

Visit ID: 53984-2. Date of Service: 03/01/2012.

Procedure: CPT Code 50590. Amount submitted by The Center for the facility charge to Medicare for payment for the procedure: $7,550

<u>Visit ID</u>: 56480-1. Date of Service: 06/20/2013.

Procedure: CPT Code 50590. Amount submitted by The Center for the facility charge to Medicare for payment for the procedure: $7,550

<u>Visit ID</u>: 54254-4. Date of Service: 01/17/2013.

Procedure: CPT Code 50590. Amount submitted by The Center for the facility charge to Medicare for payment for the procedure: $7,550

<u>Visit ID</u>: 53203-1. Date of Service: 09/29/2011.

Procedure: CPT Code 50590. Amount submitted by The Center for the facility charge to Medicare for payment for the procedure: $7,055

<u>Visit ID</u>: 53116-1. Date of Service: 08/11/2011.

Procedure: CPT Code 50590. Amount submitted by The Center for the facility charge to Medicare for payment for the procedure: $7,055

<u>Visit ID</u>: 55570-2. Date of Service: 02/07/2013.

Procedure: CPT Code 50590. Amount submitted by The Center for the facility charge to Medicare for payment for the procedure: $7,640

<u>Visit ID</u>: 53053-1. Date of Service: 08/04/2011.

Procedure: CPT Code 50590. Amount submitted by The Center for the facility charge to Medicare for payment for the procedure: $7,055

<u>Visit ID</u>: 57887-1. Date of Service: 02/20/2014.

Procedure: CPT Code 50590. Amount submitted by The Center for the facility charge to Medicare for payment for the procedure: $8,079

<u>Visit ID</u>: 53313-1. Date of Service: 10/13/2011.

Procedure: CPT Code 50590. Amount submitted by The Center for the facility charge to Medicare for payment for the procedure: $7,055

<u>Visit ID</u>: 56697-1. Date of Service: 09/05/2013.

Procedure: CPT Code 50590. Amount submitted by The Center for the facility charge to Medicare for payment for the procedure: $7,550

**Tricare**

<u>Visit ID</u>: 56179-1. Date of Service: 04/25/2013.

Procedure: CPT Code 50590. Amount submitted by The Center for the facility charge to Tricare for payment for the procedure: $7,550

Visit ID: 53484-1. Date of Service: 10/10/2011.

Procedure: CPT Code 50590. Amount submitted by The Center for the facility charge to Tricare for payment for the procedure: $7,055

Visit ID: 57574-2. Date of Service: 01/02/2014.

Procedure: CPT Code 50590. Amount submitted by The Center for the facility charge to Tricare for payment for the procedure: $8,079

Visit ID: 57170-2. Date of Service: 01/02/2014.

Procedure: CPT Code 50590. Amount submitted by The Center for the facility charge to Tricare for payment for the procedure: $8,079

Visit ID: 54945-3. Date of Service: 08/29/2012.

Procedure: CPT Code 50590. Amount submitted by The Center for the facility charge to Tricare for payment for the procedure: $7,550

Visit ID: 53978-1. Date of Service: 01/23/2012.

Procedure: CPT Code 50590. Amount submitted by The Center for the facility charge to Tricare for payment for the procedure: $7,055

Visit ID: 57084-1. Date of Service: 10/10/2013.

Procedure: CPT Code 50590. Amount submitted by The Center for the facility charge to Tricare for payment for the procedure: $7,550

Visit ID: 50814-2. Date of Service: 11/08/2010.

Procedure: CPT Code 50590. Amount submitted by The Center for the facility charge to Tricare for payment for the procedure: $6,593

Visit ID: 55159-1. Date of Service: 10/04/2012.

Procedure: CPT Code 50590. Amount submitted by The Center for the facility charge to Tricare for payment for the procedure: $7,550

Visit ID: 56290-3. Date of Service: 01/30/2014.

Procedure: CPT Code 50590. Amount submitted by The Center for the facility charge to Tricare for payment for the procedure: $8,079

Visit ID: 56951-1. Date of Service: 09/19/2013.

Procedure: CPT Code 50590. Amount submitted by The Center for the facility charge to Tricare for payment for the procedure: $7,550

Visit ID: 53123-1. Date of Service: 07/29/2011.

Procedure: CPT Code 50590. Amount submitted by The Center for the facility charge to Tricare for payment for the procedure: $7,550

Visit ID: 57279-1. Date of Service: 11/11/2013.

Procedure: CPT Code 50590. Amount submitted by The Center for the facility charge to Tricare for payment for the procedure: $7,550

Visit ID: 57754-1. Date of Service: 01/30/2014.

Procedure: CPT Code 50590. Amount submitted by The Center for the facility charge to Tricare for payment for the procedure: $8,079

Visit ID: 54169-1. Date of Service: 02/23/2012.

Procedure: CPT Code 50590. Amount submitted by The Center for the facility charge to Tricare for payment for the procedure: $7,055

**Railroad Medicare**

Visit ID: 39504-5. Date of Service: 01/26/2012.

Procedure: CPT Code 50590. Amount submitted by The Center for the facility charge to Railroad Medicare for payment for the procedure: $7,055

## COUNT I AGAINST DEFENDANT SCA
## VIOLATION OF 31 U.S.C. § 3729 (a)(1)(A)

50.    Relator hereby incorporates and re-alleges all the preceding paragraphs as if set forth fully herein.

51.    Defendant by and through its agents, officers, and employees, knowingly presented or caused to be presented false or fraudulent claims for payment or approval in violation of 31 U.S.C. §3729(a)(1)(A).

52.    The United States has been damaged as a result of Defendant's violations of the False Claims Act in an amount to be proven at trial. The United States is entitled to this sum as reimbursement for monies obtained by the Defendant for false claims submitted to the United States.

53.     The United States is entitled to three times the total damages sustained as a result of the Defendant's violations.

54.     The United States is entitled to a civil penalty of not less than $5,000.00 and not more than $10,000.00, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 Note; Public Law 104-410) and the Civil Penalties Inflation Adjustment Act Improvements Act of 2015, for each of Defendant's false claims.

55.     Relator is entitled to reasonable attorney's fees and cost pursuant to 31 U.S.C. § 3730(d)(1).

## COUNT II AGAINST DEFENDANT SCA
### FALSE CLAIMS ACTS VIOLATIONS 31 U.S.C. § 3729(a)(1)(B)

56.     Relator hereby incorporates and hereby re-alleges all of the preceding paragraphs as if fully set forth herein.

57.     Defendant by and through its agents, officers, and employees, knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim in violation of 31 U.S.C. § 3729 (a)(1)(B).

58.     The United States has been damaged as a result of Defendant's violations of the False Claims Act in an amount to be proven at trial.  The United States is entitled to this sum as reimbursement for monies obtained by the Defendant for false claims submitted to the United States.

59.     The United States is entitled to three times the total of damages sustained as a result of the Defendant's violations of 31 U.S.C. § 3729(a)(1)(B).

60.     The United States is entitled to a civil penalty of not less than $5,000.00 and not more than $10,000.00, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of

1990 (28 U.S.C. 2461 Note; Public Law 104-410) ) and the Civil Penalties Inflation Adjustment Act Improvements Act of 2015, for each of Defendant's false claims.

61.    The Relator is entitled to reasonable attorney's fees and costs pursuant to 31 U.S.C. § 3730(d)(1).

## COUNT III AGAINST DEFENDANT SCA
## FALSE BILLINGS INCIDENT TO ANTI-BACK STATUTE VIOLATIONS

62.    Relator hereby incorporates and re-alleges all preceding paragraphs as if set forth fully herein.

63.    From 2010 to the present, Defendant violated the Anti-Kickback Law, 42 U.S.C. § 1320a-7b(b), by entering into prohibited financial relationships with physicians.

64.    The United States conditions payment on Defendant's compliance with the Anti-Kickback law, 42 U.S.C. § 1320a-7b (b).

65.    Defendant submitted claims for payment rendered to Medicare patients while knowingly violating the Anti-Kickback law and thereby statutorily ineligible to receive payment in violation of the False Claims Act, 31 U.S.C. § 3729.

66.    Accordingly, Defendant, by and through its agents, officers, and employees, knowingly presented or caused to be presented false or fraudulent claims for payment or approval and knowingly made, used, caused to be made or used, false records or statements material to a false or fraudulent claim and/or knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government in violation of 31 U.S.C. § 3729.

67. The United States has been damaged as a result of Defendant's violations of the False Claims Act in an amount to be proven at trial. The United States is entitled to this sum as reimbursement for monies obtained by the Defendant for false claims submitted to the United States.

68. The United States is entitled to three times the total damages sustained as a result of Defendant's violations of the 31 U.S.C. § 3729.

69. The United States is entitled to a civil penalty of not less than $5,000.00 and not more than $10,000.00, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 Note; Public Law 104-410), ) and the Civil Penalties Inflation Adjustment Act Improvements Act of 2015, for each of Defendant's false claims.

70. The Relator is entitled to reasonable attorney's fees and costs pursuant to 31 U.S.C. § 3730(d)(1).

## COUNT IV AGAINST DEFENDANT THE CENTER
## VIOLATION OF 31 U.S.C. § 3729 (a)(1)(A)

71. Relator hereby incorporates and re-alleges all the preceding paragraphs as if set forth fully herein.

72. Defendant by and through its agents, officers, and employees, knowingly presented or caused to be presented false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

73. The United States has been damaged as a result of Defendant's violations of the False Claims Act in an amount to be proven at trial. The United States is entitled to this sum as reimbursement for monies obtained by the Defendant for false claims submitted to the United States.

74.     The United States is entitled to three times the total damages sustained as a result of the Defendant's violations.

75.     The United States is entitled to a civil penalty of not less than $5,000.00 and not more than $10,000.00, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 Note; Public Law 104-410) ) and the Civil Penalties Inflation Adjustment Act Improvements Act of 2015, for each of Defendant's false claims.

76.     Relator is entitled to reasonable attorney's fees and costs pursuant to 31 U.S.C. § 3730(d)(1).

## COUNT V AGAINST DEFENDANT THE CENTER
## FALSE CLAIMS ACTS VIOLATIONS 31 U.S.C. § 3729(a)(1)(B)

77.     Relator hereby incorporates and hereby re-alleges all of the preceding paragraphs as if fully set forth herein.

78.     Defendant by and through its agents, officers, and employees, knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim in violation of 31 U.S.C. § 3729 (a)(1)(B).

79.     The United States has been damaged as a result of Defendant's violations of the False Claims Act in an amount to be proven at trial. The United States is entitled to this sum as reimbursement for monies obtained by the Defendant for false claims submitted to the United States.

80.     The United States is entitled to three times the total of damages sustained as a result of the Defendant's violations of 31 U.S.C. § 3729(a)(1)(B).

81.     The United States is entitled to a civil penalty of not less than $5,000.00 and not more than $10,000.00, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of

1990 (28 U.S.C. 2461 Note; Public Law 104-410) and the Civil Penalties Inflation Adjustment Act Improvements Act of 2015, for each of Defendant's false claims.

82.     The Relator is entitled to reasonable attorney's fees and costs pursuant to 31 U.S.C. § 3730(d)(1).

## COUNT VI AGAINST DEFENDANT THE CENTER
## FALSE BILLINGS INCIDENT TO ANTI-BACK STATUTE VIOLATIONS

83.     Relator hereby incorporates and re-alleges all preceding paragraphs as if set forth fully herein.

84.     From 2010 to the present, Defendant violated the Anti-Kickback Law, 42 U.S.C. § 1320a-7b(b), by entering into prohibited financial relationships with physicians.

85.     The United States conditions payment on Defendant's compliance with the Anti-Kickback law, 42 U.S.C. § 1320a-7b (b).

86.     Defendant submitted and continue to submit claims for payment rendered to Medicare patients while knowingly violating the Anti-Kickback law and thereby statutorily ineligible to receive payment in violation of the False Claims Act, 31 U.S.C. § 3729.

87.     Accordingly, Defendant, by and through its agents, officers, and employees, knowingly presented or caused to be presented false or fraudulent claims for payment or approval and knowingly made, used, caused to be made or used, false records or statements material to a false or fraudulent claim and/or knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government in violation of 31 U.S.C. § 3729.

88.     The United States has been damaged as a result of Defendant's violations of the False Claims Act in an amount to be proven at trial. The United States is entitled to this sum as reimbursement for monies obtained by the Defendant for false claims submitted to the United States.

89.     The United States is entitled to three times the total damages sustained as a result of Defendant's violations of the 31 U.S.C. § 3729.

90.     The United States is entitled to a civil penalty of not less than $5,000.00 and not more than $10,000.00, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 Note; Public Law 104-410) ) and the Civil Penalties Inflation Adjustment Act Improvements Act of 2015, for each of Defendant's false claims.

91.     The Relator is entitled to reasonable attorney's fees and costs pursuant to 31 U.S.C. § 3730(d)(1).

## COUNT VII AGAINST DEFENDANT DR. HUNTER
## VIOLATION OF 31 U.S.C. §3729 (a)(1)(A)

92.     Relator hereby incorporates and re-alleges all the preceding paragraphs as if set forth fully herein.

93.     Defendant by and through its agents, officers, and employees, knowingly presented or caused to be presented false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

94.     The United States has been damaged as a result of Defendant's violations of the False Claims Act in an amount to be proven at trial. The United States is entitled to this sum as reimbursement for monies obtained by the Defendant for false claims submitted to the United States.

95.     The United States is entitled to three times the total damages sustained as a result of the Defendant's violations.

96.     The United States is entitled to a civil penalty of not less than $5,000.00 and not more than $10,000.00, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 Note; Public Law 104-410)  and the Civil Penalties Inflation Adjustment Act Improvements Act of 2015, for each of Defendant's false claims.

97.     Relator is entitled to reasonable attorney's fees and costs pursuant to 31 U.S.C. § 3730(d)(1).

### COUNT VIII AGAINST DEFENDANT DR. HUNTER
### FALSE CLAIMS ACTS VIOLATIONS 31 U.S.C. § 3729(a)(1)(B)

98.     Relator hereby incorporates and hereby re-alleges all of the preceding paragraphs as if fully set forth herein.

99.     Defendant by and through its agents, officers, and employees, knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim in violation of 31 U.S.C. § 3729 (a)(1)(B).

100.    The United States has been damaged as a result of Defendant's violations of the False Claims Act in an amount to be proven at trial.  The United States is entitled to this sum as reimbursement for monies obtained by the Defendant for false claims submitted to the United States.

101.    The United States is entitled to three times the total of damages sustained as a result of the Defendant's violations of 31 U.S.C. § 3729(a)(1)(B).

102.    The United States is entitled to a civil penalty of not less than $5,000.00 and not more than $10,000.00, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of

1990 (28 U.S.C. 2461 Note; Public Law 104-410) and the Civil Penalties Inflation Adjustment Act Improvements Act of 2015, for each of Defendant's false claims.

103.    The Relator is entitled to reasonable attorney's fees and costs pursuant to 31 U.S.C. § 3730(d)(1).

## COUNT IX AGAINST DEFENDANT DR. HUNTER
## FALSE BILLINGS INCIDENT TO ANTI-BACK STATUTE VIOLATIONS

104.    Relator hereby incorporates and re-alleges all preceding paragraphs as if set forth fully herein.

105.    From 2010 to the present, Defendant violated the Anti-Kickback Law, 42 U.S.C. §1320a-7b(b), by entering into prohibited financial relationships with physicians.

106.    The United States conditions payment on Defendant's compliance with the Anti-Kickback law, 42 U.S.C. § 1320a-7b (b).

107.    Defendant submitted and continue to submit claims for payment rendered to Medicare patients while knowingly violating the Anti-Kickback law and thereby statutorily ineligible to receive payment in violation of the False Claims Act, 31 U.S.C. § 3729.

108.    Accordingly, Defendant, by and through its agents, officers, and employees, knowingly presented or caused to be presented false or fraudulent claims for payment or approval and knowingly made, used, caused to be made or used, false records or statements material to a false or fraudulent claim and/or knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government in violation of 31 U.S.C. § 3729.

109.    The United States has been damaged as a result of Defendant's violations of the False Claims Act in an amount to be proven at trial. The United States is entitled to this sum as reimbursement for monies obtained by the Defendant for false claims submitted to the United States.

110.    The United States is entitled to three times the total damages sustained as a result of Defendant's violations of the 31 U.S.C. § 3729.

111.    The United States is entitled to a civil penalty of not less than $5,000.00 and not more than $10,000.00, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 Note; Public Law 104-410) for each of Defendant's false claims.

112.    The Relator is entitled to reasonable attorney's fees and cost pursuant to 31 U.S.C. § 3730(d)(1).

### COUNT X
### VIOLATION OF THE WHISTLEBLOWER PROTECTION PROVISIONS OF THE FALSE CLAIMS ACT 31 U.S.C. § 3730(h)

113.    Relator hereby incorporates and re-alleges all preceding paragraphs as if set forth fully herein.

114.    In an attempt to stop Defendants from submitting false claims, Relator Thompson raised the issue of medically unnecessary lithotripsy procedures and the Surgical Care entity Defendants providing prohibited kickbacks to Dr. Hunter for related to the lithotripsy procedures. Relator Thompson provided a suggestion of an independent firm that could perform a review of Defendant Dr. Hunter's patient charts and The Center's patient charts to no avail. Defendant SCA ignored Relator Thompson's suggestion for an outside firm and instead went with two separate SCA affiliated urologists to perform the review. As Relator continued to press the issue in an attempt to stop one or more false claims from being submitted to the United

States, his superiors ordered him to stand down, took him off of the issue, and did not further interview or make inquiry of the Relator in regard to any evidence he had.

115.    Relator suggested maintaining a record of investigation into the false claims made in SCA's hotline case management system but was rebuffed. Relator advised SCA and Kathy Myers, The Facility Administrator at The Center, of a recently settled False Claims Act case that had similar characteristics to the facts of the allegations contained in this Complaint. Relator advised that this increased the risk level of the allegations and possible sanctions. There was not meaningful movement or progress on the internal investigation after the Relator raised these concerns.

116.    Relator verbally advised his superior on more than one occasion that the internal investigation of these false claims should be reported to the SCA Compliance Committee of the Board of Directors. However, a report was not provided to the Board until after significant delay in time.

117.    Relator, on more than one occasion, requested copies of known payer denials to The Center for procedure code 50590 but was never provided the documentation. Relator also made multiple requests for notes and/or reports from the peer review performed by the second SCA-affiliated peer reviewer. The results were provided to the Relator three months after SCA received them.

118.    Relator requested copies of the records that had been reviewed by the second peer reviewer from The Center several times. Relator received an intimidating phone call from The Center's Regional Vice President, Rena Courtay, questioning the Relator's need for the records in the course of SCA's investigation. Shortly after this phone call, Relator was removed from the investigation by his superiors.

119.    Relator provided material evidence to the Government regarding the allegations prior to his termination and was working with counsel on the filing of this False Claims Act Complaint at the time of his termination.

120.    Defendant Surgical Care Affiliates discharged and otherwise discriminated against Relator, Scott Thompson, in the terms and conditions of his employment, because of the lawful acts done by Relator in furtherance of his efforts to stop one or more violations of the False Claims Act by Defendants Surgical Care Affiliates, Orlando; Center for Outpatient Surgery, LP; and Dr. Patrick Hunter.  Because of his efforts to stop one or more false claims to the United States, Defendant Surgical Care Affiliates terminated Relator on December 2, 2017 in violation of 31 U.S.C. § 3730(h).

121.    Pursuant to the False Claims Act, Relator is entitled to reinstatement with the same seniority status that he would have had but for the discrimination, two times the amount of back pay, interest on back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorney's fees.

**PRAYER FOR RELIEF**

WHEREFORE, Relator prays for judgment

(a)    Ordering Defendants to pay the United States Government three times its actual damages resulting from the Defendants' violations of the False Claims Act;

(b)    Ordering Defendants to pay the United States Government a civil penalty for each false claim as set forth in the False Claims Act;

(c) Ordering Defendant to pay Relator monetary damages for its violation of 31 U.S.C. § 3730 (h), the Whistleblower Protection Provision of the False Claims Act;

(d) Awarding Relator an amount the Court decides is reasonable for collecting the civil penalty and monetary damages by pursuing this matter, which award, by statute shall not be less than 15% nor more than 25% of the proceeds of this action or the settlement of any such claim, if the Government intervenes in the action and not less than 25% nor more than 30% if the Government declines to intervene in the action.

(e)     Ordering the Defendants to pay Relator's attorney's fees and costs;

(f)     Granting such other relief as the Court may deem just and proper.

**RELATOR HEREBY DEMANDS TRIAL BY STRUCK JURY.**

James D. Young (FBN 567507)
jyoung@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
76 S. Laura Street, Suite 1100
Jacksonville, FL 32202
(904)361-0012 Phone
(904)366-7677 Fax

Donald P. McKenna, Jr.
*(Pro Hac Vice to be filed)*
don@hwnn.com
HARE, WYNN, NEWELL & NEWTON, LLP
2025 3rd Ave. N. Suite 800
Birmingham AL 35203
Phone: 800-568-5330